NOTE:  This order is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**In re:  NETSCOUT SYSTEMS, INC.,**
*Petitioner*

---

2021-173

---

On Petition for Writ of Mandamus to the United States District Court for the Western District of Texas in No. 6:20-cv-00914-ADA, Judge Alan D. Albright.

---

## ON PETITION AND MOTION

---

Before LOURIE, BRYSON, and TARANTO, *Circuit Judges*.

PER CURIAM.

### O R D E R

NetScout Systems, Inc., petitions for a writ of mandamus directing the United States District Court for the Western District of Texas to transfer this action to the United States District Court for the Eastern District of Michigan.  PacSec3, LLC, opposes the petition and moves for leave to file its response out of time.  NetScout replies.  For the following reasons, we grant the petition.

I

On October 2, 2020, PacSec3 brought this patent infringement action in the Waco Division of the Western District of Texas.  PacSec3 filed the action shortly after incorporating in Texas and acquiring the asserted patents, which concern network firewalls.  App. 120.  PacSec3 does not have an office or employee in the Western District of Texas.  Its only employee is located in the Southern District of Texas, App. 112, 118.

In December 2020, NetScout moved to transfer this case to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).  NetScout noted that the accused products were designed and developed by its security division in Ann Arbor, Michigan, where its core technical documents and source code are located.  App. 40–42.  NetScout noted that engineers knowledgeable about the design, development, and operation of the accused products, including NetScout's Vice President of Engineering, Scott Dawson, work from Ann Arbor, Michigan.  App. 41.  NetScout also identified two of its employees from its headquarters in Massachusetts who are knowledgeable about NetScout's relevant financial and marketing information.  *Id.*  NetScout stated that none of the design or development work on the accused products was conducted in its sole Texas facility, which is located in the Eastern District of Texas.  *Id.* at 42.

In its response opposing the transfer motion, PacSec3 argued that judicial economy favored denying the motion.  In support of that argument, PacSec3 argued that it had filed additional related lawsuits in the Western District of Texas after the transfer motion was filed in this case.  Those cases alleged that different defendants had infringed the same patents that are asserted in this case.  *See PacSec3, LLC v. Juniper Networks, Inc.*, No. 6:21-cv-00387-ADA (filed Apr. 21, 2021); *PacSec3, LLC v. Cisco Sys., Inc.*, No. 6:21-cv-00388-ADA (filed Apr. 21, 2021); *PacSec3, LLC*

*v. Watchguard Techs., Inc.*, No. 6:21-cv-00633-ADA (filed June 18, 2021).[*]

The district court denied NetScout's motion to transfer the case. At the outset, the court found that this action could have been brought in the Eastern District of Michigan. The district court then analyzed NetScout's transfer motion by applying the set of private-interest and public-interest factors that the Fifth Circuit has directed courts to use in making transfer decisions under section 1404(a). *See In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

The district court took particular note of five of the factors that the Fifth Circuit has identified as bearing on transfer: (1) the relative ease of access to sources of proof between the forums; (2) the relative convenience of the two forums for potential witnesses; (3) practical issues that may make trial of a case easier, more expeditious, and less expensive in one of the forums; (4) the administrative difficulties flowing from court congestion; and (5) the local interest in having disputes regarding activities occurring principally within a particular district decided by a court within that district.

As for the sources of proof, the district court recognized that NetScout had attested to the fact that the great bulk of its documentary evidence was located in the Eastern District of Michigan. However, the court found that NetScout had failed to "specifically identify what documents are in physical form and what documents are in electronic form," and had failed to explain why documents in physical form could not be made available electronically from NetScout's offices in the Eastern District of Texas. App. 115. For that

---

[*] The *Cisco* case was voluntarily dismissed with prejudice on June 23, 2021. App. 132.

reason, the district court found that the sources-of-proof factor favored neither venue.

With regard to the relative convenience of the two forums for potential witnesses, the court recognized that at least one NetScout witness, Scott Dawson, resides in the Eastern District of Michigan while no party identified any prospective witnesses located in the Western District of Texas. Nonetheless, the court concluded that the convenience of the witnesses did not weigh in favor of either venue. In particular, the court explained that in its view "the convenience of party witnesses" is generally entitled to "little weight." *Id.* at 117 (internal quotation marks and citation omitted). The court found that the non-party witnesses who are in California would find either venue equally convenient. *Id.* at 118.

With regard to the practical issues that bear on the convenience and cost of a trial, the district court took note of the infringement cases that PacSec3 had filed in the Western District of Texas asserting the same patents against other defendants. Those cases were filed after NetScout filed its motion to transfer. *Id.* at 119. Based on the fact that the cases shared overlapping patents, the court presumed that all the cases would involve overlapping claim construction, invalidity, prior art, conception, and reduction to practice issues. *Id.* Because keeping the case against NetScout in the Western District of Texas would allow one trial judge to oversee those issues in all of PacSec3's filed cases, the district court found that the interests of judicial economy weighed strongly against transferring the case. *Id.*

The court recognized that the Eastern District of Michigan had a greater local interest in this dispute because the accused products resulted from research and development that took place in that district. Moreover, the court noted that PacSec3 was only recently formed and associated with

Texas. *Id.* at 120. The district court concluded, however, that the court congestion factor weighed strongly against transfer because the court in the Western District of Texas would be likely to reach trial more quickly than would a court in the Eastern District of Michigan. *Id.* at 119–20.

The district court found that the remaining factors were neutral. Taking into account the weight it assigned to each of the factors, the district court concluded that NetScout had failed to show that the Eastern District of Michigan was a clearly more convenient forum for this litigation. Accordingly, the district court denied the transfer motion.

## II

Our review of transfer rulings is governed by the law of the regional circuit, which in this case is the Fifth Circuit. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Under Fifth Circuit law, the governing principles are well settled. Section 1404(a) authorizes a court to transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice[.]" Fifth Circuit law provides that a motion to transfer should be granted if "the movant demonstrates that the transferee venue is clearly more convenient." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (quoting *Volkswagen II*, 545 F.3d at 315) (internal quotation marks omitted).

A district court enjoys broad discretion in making a transfer determination. *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010). We have explained, however, that our deference does not exempt transfer determinations from scrutiny on mandamus. *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021). When a court's denial of a motion to transfer under section 1404(a) contravenes governing legal standards, we have issued mandamus to overturn the denial of transfer. *See, e.g., In re Apple Inc.*, 979 F.3d 1332 (Fed. Cir. 2020). Based on a close study of the record in this case, we conclude that the court clearly

abused its discretion in finding that NetScout failed to make the requisite showing to call for transfer of this case to the Eastern District of Michigan.

A

The district court's determination that the Eastern District of Michigan had a greater local interest in this case than the Western District of Texas is amply supported. It is undisputed that the events that form the basis for PacSec3's infringement contentions occurred in the Eastern District of Michigan where the accused products were developed. *See Apple*, 979 F.3d at 1345 (noting that this factor "most notably regards . . . the 'significant connections between a particular venue and *the events that gave rise to a suit.*'" (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in *Apple*).

The district court also correctly determined that PacSec3's connections to Texas were recent and insubstantial. The record shows that PacSec3 was formed just a week before its acquisition of the asserted patents and less than two months before filing this lawsuit. Moreover, PacSec3 is based in the Southern District of Texas, not the Western District of Texas. Its connections to the forum plainly do not give the Western District of Texas any significant local interest in resolving this litigation. *See In re Juniper Networks, Inc.*, No. 2021-160, 2021 WL 4343309, at *5 (Fed. Cir. Sept. 24, 2021); *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1365 (Fed. Cir. 2021); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (party's presence in Texas "appears to be recent, ephemeral, and an artifact of litigation.").

B

The district court clearly erred in its assessment that the convenience of the witnesses was a neutral factor in the transfer analysis. The Fifth Circuit has stated that the convenience of the witnesses is best served if the court can

"minimize the time when [witnesses] are removed from their regular work or home responsibilities." *In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004). That task "gets increasingly difficult and complicated when the travel time from [the witnesses'] home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour." *Id.*; *see also In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021) ("In light of the purpose underlying the rule, the inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time.").

Those principles are not, as the district court viewed them, applicable only to non-party witnesses. As we have held, the fact that witnesses are affiliated with a party "does not negate the inconvenience and cost to those individuals to travel a significant distance to testify." *Google*, 2021 WL 4427899, at *4; *see also Samsung*, 2 F.4th at 1379 (holding that a district court's section 1404(a) analysis "must consider" the convenience of "possible party witnesses"); *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *5 (Fed. Cir. Aug. 2, 2021); *In re Apple Inc.*, 818 F. App'x 1001, 1003 (Fed. Cir. 2020) (rejecting the view that the convenience of party witnesses is given "little weight"). We have likewise rejected the categorical assumption, made by the district court in this case, that defendants are likely to call few, if any, of the proposed party witnesses who are identified in support of a transfer motion. *Juniper Networks*, 2021 WL 4343309, at *4.

PacSec3 argues that its sole employee would be more inconvenienced by having to travel to the Eastern District of Michigan rather than to Waco, Texas. That witness, however, does not live in the Western District of Texas and would have to travel close to three hours to reach either forum. App. 97. The district court did not attach weight to the convenience of that witness. *Id.* at 118.

The district court also rejected PacSec3's argument that the Western District of Texas would be more convenient for three non-party witnesses in California, who are roughly equidistant from both the transferor and transferee forums. And with regard to PacSec3's contention that a number of NetScout's customers are located in Texas, the court ruled that PacSec3 had not established that any specific employees of those companies would be trial witnesses. *Id.* at 117. Those determinations have not been shown to be incorrect.

By contrast, NetScout explained that its engineers who designed and worked on the accused products are located in the Eastern District of Michigan. NetScout identified at least one engineer by name, Mr. Dawson, who resides there and who would likely be called as a witness. NetScout also identified two employees who work from NetScout's headquarters in Massachusetts and who have knowledge pertinent to the case. Those witnesses undisputedly would find trial in the Eastern District of Michigan more convenient. While PacSec3 contends that there are employees of NetScout in Texas that are knowledgeable about the accused products, it does not identify those individuals, and the district court did not find they have relevant information.

Accordingly, NetScout has shown that the Eastern District of Michigan is clearly the more convenient venue for the identified witnesses, and PacSec 3 has not shown that the Western District of Texas is the more convenient venue for any witnesses. The district court therefore erred in not finding that the convenience of the witnesses favors transfer. *See Samsung*, 2 F.4th at 1379.

C

The district court also erred in its assessment of the sources of proof. That inquiry focuses on "the relative access to sources of evidence in the two competing forums," *Juniper Networks*, 2021 WL 4343309, at *6. Yet here, no

sources of proof are in located in the Western District of Texas. By contrast, there is no dispute that significant documents and source code were created and are maintained in the Eastern District of Michigan. While electronic storage makes documents more widely accessible than was true in the past, the fact that documents can often be accessed remotely does not render the sources-of-proof factor irrelevant. *See Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous."). The district court thus erred in not weighing this factor at least slightly in favor of transfer.

## D

The district court also erred in weighing the practical problems factor significantly against transfer. At the time of the complaint and even at the time of NetScout's transfer motion in December 2020, there was no judicial economy benefit to keeping this case in the Western District of Texas. PacSec3 did not file the first of the other Texas actions relied on by the district court until April 2021. In previous cases, we have rejected a district court's reliance on considerations of judicial economy arising after the filing of the lawsuit or the transfer motion as irrelevant to the analysis. *In re HP Inc.*, 826 F. App'x 899, 903 n.2 (Fed. Cir. 2020); *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013).

PacSec3 asks us to reject those cases as non-binding and contends that giving significant weight to post-motion events furthers the purposes of section 1404(a). We are not persuaded. To the extent that post-motion events may ever be considered in a section 1404(a) analysis, we must guard against manipulative measures designed to defeat transfer to a more convenient venue. *See Van Dusen v. Barrack*, 376 U.S. 612, 624 (1964); *Samsung*, 2 F.4th at 1378 ("We have similarly rejected parties' attempts to manipulate

venue."). PacSec3's infringement action against NetScout lacks any legitimate mooring to the Western District of Texas. To allow PacSec3 to defeat transfer to a more convenient forum by assigning significant weight to PacSec3's other actions, filed after the transfer motion was filed in this case, would invite venue manipulation.

Beyond that, while we recognize that judicial economy can serve important ends in a transfer analysis, we have rejected as a general proposition that the mere co-pendency of infringement suits in a particular district automatically tips the balance in the non-movant's favor. *See In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017); *see also Samsung*, 2 F.4th at 1379–80 (concluding that the district court erred in allowing judicial economy concerns to outweigh convenience); *EMC*, 501 F. App'x at 976. Here, PacSec3's other actions in the Western District of Texas involve different defendants and different accused products. They are therefore likely to involve significantly different discovery and evidence. Any judicial economy considerations would be insufficient to outweigh the clear benefits of transfer in light of the imbalance in the parties' respective presentations on the other private-interest and public-interest factors.

E

Finally, we disagree with the district court that court congestion analysis provides a basis for denying transfer. The district court did not find an appreciable difference in the degree of docket congestion between the two forums. *See Juniper Networks*, 2021 WL 4343309, at *6. Nor did the court point to any reason that a more rapid disposition of this case that might be available in Texas is worthy of important weight. *Id.* Instead, the court based its finding as to the court congestion factor solely on the median time to trial between the districts. We reject that rationale for denying transfer.

We have held that when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). And where, as here, the court has relied only on median time-to-trial statistics to support its conclusion, we have characterized this factor as the "most speculative" of the factors bearing on the transfer decision. *Id.* Speculation about what might happen with regard to the speed of adjudication in a particular case is insufficient to warrant denying transfer to a more convenient forum.

F

In sum, the center of gravity of this action lies in the transferee district, and decidedly not in the Western District of Texas. Several of the most important factors bearing on the transfer decision favor transferring the case, and no factor favors retaining the case in the Western District of Texas. In fact, there is nothing at all that ties this case to the Western District of Texas: no witnesses reside there; no evidence is present there; and none of the conduct giving rise to this action took place there. The only apparent connection between this case and the Western District of Texas is that it appears that PacSec3 prefers to file its suits there. That is not enough to overcome a transfer motion directed to a district which is the home of evidence, witnesses and the conduct giving rise to the action. We therefore grant NetScout's petition seeking transfer of the case to the Eastern District of Michigan.

Accordingly,

IT IS ORDERED THAT:

(1)  PacSec3's unopposed motion to file its corrected response brief out of time is granted. ECF Nos. 14 and 15 are accepted for filing.

(2)  The petition for mandamus is granted. The district court's July 27, 2021, order is vacated, and it is directed to

transfer this matter to the United States District Court for the Eastern District of Michigan.

FOR THE COURT

October 13, 2021                /s/ Peter R. Marksteiner
     Date                       Peter R. Marksteiner
                                Clerk of Court

s28